UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anthony Alford,
Plaintiff,

                                                Case No. 08-15145
                                                Hon. Nancy G. Edmunds

v.

City of Detroit, et al.,
Defendants.

_____/

**OPINION AND ORDER GRANTING THE STATE DEFENDANTS' MOTION TO DISMISS THE MICHIGAN STATE POLICE, THE 36TH DISTRICT COURT AND THE THIRD JUDICIAL CIRCUIT COURT [11] AND GRANTING IN PART AND DENYING IN PART WAYNE COUNTY'S MOTION TO DISMISS [10]**

This action, alleging violations of Plaintiff's Fourth and Fourteenth Amendment rights, and brought pursuant to 42 U.S.C. § 1983, comes before the Court on the State Defendants' (the Michigan State Police, the 36th District Court and the Third Judicial Circuit Court) and Wayne County's motions to dismiss. As discussed more fully below, the State Defendants' motion to dismiss is GRANTED and Wayne County's motion is GRANTED IN PART and DENIED IN PART.

**I.    Facts**

Plaintiff's claims arise out of his efforts over the past several years to distinguish himself, in the records of the City of Detroit, the State of Michigan and the County of Wayne, from his brother (Keith), who has repeatedly and successfully, since 1998, used

1

Plaintiff's identity as an alias when arrested. Plaintiff claims, without distinguishing among them, that the defendants violated his Fourth and Fourteenth Amendment[1] rights by using excessive force to arrest him without probable cause, by failing to investigate his claim of innocence (which he asserts was supported by documents that he provided at the time of his incarceration), keeping him incarcerated over the weekend and failing to release him immediately on Monday morning after a circuit court judge verified the mistaken identity and ordered him released.

Plaintiff is a 5'9" black male who weighs 240 lbs. His brother Keith is a 6'0" black male who weighs 150 lbs. Plaintiff has received numerous tickets in the mail for incidents in which Keith used his name and has reported these incidents to the Detroit Police Department, the City of Detroit and members of the Detroit City Council. (Compl. ¶¶ 21-26.) In fact, Plaintiff sued the City of Detroit regarding these incidents in a case that settled in 2002. (Compl. ¶ 27.)

In October 2005 Keith was arrested by Detroit police on drug related charges. In order to ensure that there was no confusion as to Keith's identity, Plaintiff appeared at Keith's plea and sentencing in the Wayne County Circuit Court with his driver's license to see that the conviction was recorded against Keith and not Plaintiff. As a result of Keith's

---

[1] Plaintiff's original complaint also alleged violations of the Fifth and Sixth Amendments. On January 28, 2009 this Court issued an Order citing Federal Rule of Civil Procedure 8(a) deficiencies with respect to Plaintiff's Fifth and Sixth Amendment claims. In response, Plaintiff filed an Amended Complaint on February 17, 2009 which dropped Plaintiff's previously asserted Fifth and Sixth Amendment claims. Also in its Order of January 28, 2009, and in a subsequent Order dated February 20, 2009, this Court dismissed with prejudice all of the § 1983 claims against the State of Michigan as barred by the Eleventh Amendment and refused to exercise supplemental jurisdiction over Plaintiff's state law claims.

plea, Keith was incarcerated in Wayne County Jail until January 2006. (Pl.'s Resp. 4.) In spite of all of Plaintiff's efforts, The Wayne County Jail, Office of the Sheriff, still wrongly identified Keith as Plaintiff. (Pl.'s Resp. Ex. 6.) At the time of Keith's release, despite the steps that Plaintiff had taken to clear his name and despite the fact that Keith had used his own name for his sentencing and subsequent proceedings in the Wayne County Circuit Court, the Wayne County Circuit Court records still showed that Plaintiff was the defendant in the drug case. (Compl. ¶¶ 40, 47.)

In April 2006 Plaintiff learned that a bench warrant had issued in Plaintiff's name for Keith's failure to report for a court date. Upon learning of the bench warrant, Plaintiff appeared in the 36th District Court before Judge Serra who promptly found that the description of the defendant on the citation (a 6'0" 170 lb. black male) was not Plaintiff (a 5'9" 240 lb. black male). Judge Serra set aside the bench warrant and dismissed the complaint against Plaintiff. Following this incident, Plaintiff returned to the Detroit Police Department and requested that he be fingerprinted and that a record be made of the comparison of his fingerprints with those of his brother Keith. (Compl. ¶ 28.)

In July 2006 Plaintiff learned that Wayne County Circuit Court had issued yet another bench warrant against Plaintiff, this time presumably for Keith's failure to report for probation. (Compl. ¶¶ 41-42.) Plaintiff contacted the probation officer who admitted that she knew that Plaintiff was not Keith. (Pl.'s Resp. 4.) Plaintiff claims that in spite of this knowledge, the probation officer testified in court to obtain the warrant in Plaintiff's name. Plaintiff does not specify the substance of the probation officer's testimony or when the probation officer testified. (Pl.'s Resp. 4, 5, 11.) This time Plaintiff went to the Wayne

3

County Circuit Court to clear his name and simultaneously returned to the Detroit Police Department to obtain fingerprint documentation and a criminal clearance. (Compl. ¶¶ 43-44; Pl.'s Resp. 5.) Plaintiff obtained documentation of the fingerprint comparison and the criminal clearance. (Compl. ¶¶ 43-44; Pl.'s Resp. 5, Exs 7-9.) He returned to the Wayne County Circuit Court with this documentation and the court clerk promised to correct the LEIN records to show that the conviction was against Keith and not against Plaintiff. (Compl. ¶¶ 45-46; Pl.'s Resp. 5.) While Plaintiff learned that the State of Michigan had corrected their records on the OTIS system, the records in the Wayne County Circuit Court and the LEIN system were never cleared. (Compl. ¶ 47.)

On Friday, December 15, 2006, Plaintiff was driving in Monroe County and was stopped by the Michigan State Police ("Trooper Ron"). Plaintiff was arrested based upon the bench warrant, which Wayne County had never cancelled, issued against Plaintiff for Keith's failure to report for probation. Despite his protestations of innocence, and his presentation to Trooper Ron of his fingerprint and criminal clearance documentation, he was taken to Monroe County Jail and ultimately to the Wayne County Jail. (Compl. ¶¶ 50-51.) At the Wayne County Jail, Plaintiff again showed his fingerprint and criminal clearance documentation and requested that the jail officials compare his fingerprints and photos to those of his brother Keith who was incarcerated in that same jail from October 2005 to January 2006 for this very same case. (Pl.'s Resp. 6.) The sheriff refused to review the certified documentation that Plaintiff attempted to provide confirming his innocence. In spite of his protestations and demands, he remained incarcerated through the morning of Monday, December 18, 2006. (Compl. ¶ 52.)

4

On Monday morning, December 18, 2006, Plaintiff's wife and his lawyer appeared in Wayne County Circuit Court for Plaintiff's arraignment but were informed that Plaintiff was not scheduled to appear in court that day. (Compl. ¶¶ 53-54.) Plaintiff's lawyer and his wife went to the sheriff's office and demanded that Plaintiff be brought to court. The sheriff agreed to drive to Wayne County Jail to transport Plaintiff to court. (Compl. ¶ 55.) Plaintiff was then fingerprinted and the fingerprints were faxed to the Detroit Police who again confirmed that Plaintiff was not the same person as the defendant named in the warrant (his brother Keith). (Compl. ¶ 56.) The court ordered that Plaintiff be discharged from the custody of the Wayne County Jail. (Pl.'s Resp. Ex. 10.) Plaintiff was not immediately released from the courtroom but was returned to the jail for out-processing and detained for an additional eight or nine hours. (Compl. ¶ 57; Pl.'s Resp. 10.) Plaintiff was released in the early evening on that same day.

## II.     Standard of Review

The State Defendants and Wayne County move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's Complaint.[2] The inquiry on a motion to dismiss is whether the complaint sets forth allegations sufficient to make out the elements of a right to relief. Matters outside the pleadings are not to be considered and all well-pleaded facts must be taken as true. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). The court construes the complaint in the light most favorable to plaintiff, and must determine

---

[2] In its reply to Plaintiff's response to its motion to dismiss, Wayne County introduced affidavit testimony regarding out-processing procedures at Wayne County Jail. Wayne County stated in that reply that it had thereby converted its motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56(c). This Court need not consider the testimony contained in the affidavit and can rule on the original 12(b)(6) motion to dismiss without reference to evidence suggested outside the pleadings.

5

whether plaintiff can prove any set of facts that would entitle him to relief. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). While "conclusory allegations or legal conclusions masquerading as factual assertions" are insufficient, all reasonable inferences which might be drawn from the pleadings must be indulged. *Id; Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Furthermore, "'[a] case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" *Fitzke v. Shappell*, 468 F.2d 1072, 1076, n.6 (6th Cir. 1972) (quoting *Lucarell v. McNair*, 453 F.2d 836, 838 (6th Cir. 1972)).

## III.   Analysis

### A. The State Defendants' Motion to Dismiss

The State Defendants move to dismiss Plaintiff's § 1983 claims against them under the Eleventh Amendment[3] which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Amendment applies to suits brought by citizens against their own states and applies not only to the states themselves, but also "to those government entities that act as arm[s] of the State." *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 419 (6th Cir. 2004) (internal quotation marks and citations omitted). It also

---

[3] The State Defendants also move to dismiss Plaintiff's state law claims as barred by Michigan's statutory governmental immunity statute, M.C.L. § 691.1401 *et seq.* ("GTLA"). Because this Court, in its Orders dated January 28, 2009 and February 20, 2009, refused to exercise supplemental jurisdiction over Plaintiff's state law claims, this Court need not address the issue of whether Plaintiff's state law claims against the State Defendants' are barred by GTLA.

applies to individual employees of such states or state entities sued in their official capacities because they "stand in the shoes of the entity they represent." *Id.* at 520 (internal quotation marks and citation omitted).

The Michigan Department of State Police is a principal agency of the State of Michigan and is indisputably considered an "arm of the state" for Eleventh Amendment purposes. M.C.L 16.250; M.C.L 28.2 *et seq*; *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Plaintiff's claims against the Michigan State Police are dismissed with prejudice. Also, although the State Defendants do not specifically move to dismiss on behalf of any individual troopers, any potential claims against Trooper Ron in his official capacity, and Troopers John Doe IV and Jane Roe IV in their official capacities, which are the equivalent of suits against the state itself, are foreclosed. *Hamilton*, 374 F.3d at 520; *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suits against state officials in their official capacity should be treated as suits against the state).

Plaintiff never responded to the State Defendants' motion to dismiss and on May 26, 2009, this Court entered an Order requiring Plaintiff to file a responsive pleading. (Docket No. 14.) Plaintiff filed a response simply stating that Plaintiff assumed that this Court's Order of February 20, 2009, dismissing the State of Michigan, also applied to each of these "state agencies." Accordingly, Plaintiff has never filed a substantive response to the State Defendants' motion to dismiss. At the July 22, 2009 hearing on the State Defendants' motion to dismiss, Plaintiff's counsel conceded that Plaintiff was no longer pursuing its claims against the Michigan State Police, the 36th District Court or the Third Judicial Circuit Court.

For the reasons stated by Plaintiff's counsel on the record at the July 22, 2009 hearing on this matter, the Court also grants the State Defendants' motion to dismiss with prejudice the 36th District Court and the Third Judicial Circuit Court.  The Court also dismisses with prejudice any potential claims against any 36th District Court or Third Judicial Circuit Court employees in their official capacities as these would be the equivalent of claims against the already dismissed courts.  *Hamilton County*, 374 F.3d at 419; *Hafer*, 502 U.S. at 25.

### B. Wayne County's Motion to Dismiss

Wayne County argues that because Plaintiff's arrest, although ultimately determined to be a case of mistaken identity, was based on a valid warrant, and the length of detention was just over three days time and included a weekend, Plaintiff was not deprived of a federally protected right.[4]  Wayne County also argues that Plaintiff's claim that his continued detention for several hours for "out-processing," after the circuit court acknowledged the mistaken identity and ordered his release, does not amount to a

---

[4] Wayne County also argues, without distinguishing between Plaintiff's § 1983 claims and Plaintiff's state law claims, that "Wayne County is entitled to governmental immunity in this case pursuant to Michigan's Governmental Tort Liability Act, MCL 691.1401, et. seq. ("GTLA") (Mot. to Dismiss 12.)  As discussed above at note 3, this Court has refused to exercise supplemental jurisdiction over Plaintiff's state law claims and therefore need not address the applicability of GTLA to those claims.  Also, GTLA does not apply to § 1983 *Monell* practice and policy claims such as those asserted here by Plaintiff against Wayne County.  *See Mack v. City of* Detroit, 649 N.W.2d 47, 52 (Mich. 2002), superseded on other grounds by *Costa Comty. Med. Servs., Inc.*, 716 N.W.2d 236 (Mich. 2006) (recognizing areas outside GTLA where the Legislature has allowed specific actions against the government, such as actions against municipalities pursuant to 42 U.S.C. § 1983) (citing *Monell v. New York*, 436 U.S. 658 (1978)).  Accordingly, this Court need not address Wayne County's GTLA argument.

8

deprivation of due process. Wayne County argues that therefore, as a matter of law, Plaintiff has failed to allege a cognizable claim under § 1983.

Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) a deprivation of a right secured under the Constitution or federal law; and (2) that a person acting under color of state law subjected him to the deprivation or caused him to be subjected to the alleged deprivation. *Alkire v. Irving*, 330 F.3d 802, 813 (citing *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996)).

When the claim is one against a municipality, a plaintiff must prove that a governmental policy or custom caused the injury. Plaintiff must show "that the unconstitutional policy existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation." *Napier v. Madison County Ky.*, 238 F.3d 739, 743 (6th Cir. 2001). A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question and a "custom" is so permanent, widespread, or well-settled that it has the "force of law" and need not be formally approved. *Doe v. Claiborne County*, 103 F.3d 495, 507-08 (6th Cir. 1996). Also, municipal liability can attach for failure to train "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1994).

Whether based upon a theory of individual or municipal liability, the threshold question on a motion to dismiss a § 1983 claim is whether the facts as alleged, viewed in the light most favorable to the Plaintiff, state a possible claim of deprivation of a constitutional right. Plaintiff summarizes his § 1983 claim against Wayne County as follows: "With regard to Defendant Wayne County, Plaintiff alleges that the Defendant Wayne County, its Sheriff and/or its Deputy Sheriffs were acting under color of state law when they wrongfully incarcerated Plaintiff and kept him incarcerated for several days even after a Circuit Court Judge ordered him released. Thus, Plaintiff alleges that Wayne County violated Plaintiff's 4th and 14th Amendment rights in the process . . . ." (Pl.'s Resp. 8.)[5] Plaintiff's claims against Wayne County, therefore, involve two distinct time frames and two distinct Fourteenth Amendment arguments. First, Plaintiff claims that the Wayne County

---

[5] Plaintiff's reliance on the Fourth Amendment for the claim he has pleaded against Wayne County is misplaced. Plaintiff claims that the Wayne County sheriffs violated his constitutional rights by failing to investigate his claims of innocence and continuing to incarcerate him despite his protestations of innocence. As the Court recognized in *Baker v. McCollan*, 443 U.S. 137, 142 (1979), such allegations implicate the Fourteenth but not the Fourth Amendment. Like the plaintiff in *Baker*, Plaintiff's claims against Wayne County for his incarceration without investigation of his claims of innocence are "not for the wrong name being placed in the warrant or the failure to discover and change same or even the initial arrest of the respondent, but rather for the intentional failure to investigate and determine that the wrong man was imprisoned." *Id.* at 143. While Plaintiff in the case before this Court, unlike the plaintiff in *Baker*, does make allegations that could be construed to challenge the sufficiency of the warrant, Plaintiff has yet to identify the defendants responsible for, or the legal theories that would support, his Fourth Amendment claim. In any event, these allegations have not been directed against the Wayne County defendants who are not alleged to have participated in the issuance of the warrant or in Plaintiff's arrest. Plaintiff's claims, if any, against other defendants, challenging the sufficiency of the warrant, are not presently before this Court.

sheriffs should have investigated his claims of innocence and released him rather than detaining him for three days before presenting his case to a court officer. Second, Plaintiff claims that once the court verified the mistaken identity and ordered that Plaintiff be released, the Wayne County sheriffs should have immediately released him rather than holding him in custody for "out-processing" for several more hours.

**1. Fourteenth Amendment deprivation of liberty without due process for the period of time between Plaintiff's arrest and his ordered release (failure to investigate claims of mistaken identity)**

Defendant Wayne County is correct that the seminal case on the issue of continued detention based on a case of mistaken identity is *Baker v. McCollan*, 443 U.S. 137 (1979). Like the case before this Court, *Baker* involved a calculated deception by plaintiff's brother who was arrested and masqueraded as plaintiff, giving plaintiff's name and indentifying information. After the brother was released on bond, a warrant issued for his arrest. A short time later, plaintiff was stopped for a traffic violation and a warrant check at the time of the stop revealed that a warrant was out for the arrest of an individual with plaintiff's name. Despite plaintiff's protestations of mistaken identity, he was arrested and remained in jail for three days before officials recognized the error and released him.

Analyzing the case as a deprivation of due process under the Fourteenth Amendment, the Court concluded that detention for three days over the New Year's holiday, despite protestations of mistaken identity, did not, and could not, amount to a constitutional violation: "The Constitution does not guarantee that only the guilty will be arrested. . . . [and] does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" 443 U.S. at 144.

The Court concluded that: "Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution." *Id.* The Court left the door open, however, for a valid Fourteenth Amendment claim under different circumstances: "[D]epending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty . . . without due process of law." *Id.* at 145.

Since *Baker*, several courts, including the Sixth Circuit, have interpreted the *Baker* Court's implication that under different circumstances, a case of incarceration based on mistaken identity could state a constitutional claim. In *Gray v. Cuyahoga County Sheriff's Department,* 150 F.3d 579 (6th Cir. 1998), plaintiff was stopped on September 24 for a traffic violation and ticketed for driving without a license. He was sentenced to five days in jail and during his booking the jailers discovered that the Michigan Department of Corrections ("MDOC") had an outstanding parole-violator warrant for a person with the same name. Upon hearing of the warrant, Gray protested that he was not the individual wanted in the warrant and that his brother often used his information. Meanwhile, officers had obtained information from the MDOC concerning the physical description of the person who was the subject of the warrant and while most of the information matched Gray, the photograph looked nothing like him. 150 F.3d at 580. Gray continued to protest his innocence, and Cuyahoga jail officials obtained fingerprints of the man wanted in the warrant. Because of a scam perpetrated by the individual wanted in the warrant (a man whose actual name was Shaw), who had used Gray's alias on the arrest underlying the

warrant, the fingerprints matched Gray's. Gray was transferred to state prison in Michigan on November 24. On November 29, Gray's fingerprints were found not to match Shaw's, the mix-up was discovered and Gray was released that day.

Acknowledging that *Baker* was the leading case on the issue, the Sixth Circuit summarized the inquiry: "The question presented by this case is whether someone who is wrongly imprisoned as a result of mistaken identity can state a constitutional claim against his jailers based on their failure to ascertain that they had the wrong man." 150 F.3d at 582. Reversing the trial court's grant of summary judgment, the Sixth Circuit was particularly persuaded by the fact that the defendants possessed information that, if investigated, would have confirmed the mistaken identity:

> There is no dispute that Fuerst and Ussery were in possession of a photograph that bore virtually no resemblance to Gray, as well as a physical description detailing certain permanent scars that Gray did not have. . . . [T]he trier of fact could find that the failure by Fuerst and Ussery to ascertain that they were holding the wrong person violated Gray's due-process rights under the Fourteenth Amendment. . . . On remand, therefore, the principal question for the trier of fact will be whether Fuerst and/or Ussery acted with something akin to deliberate indifference in failing to ascertain that the Dwayne Gray they had in custody was not the person wanted by the Michigan authorities on the outstanding parole-violation warrant.

150 F.3d at 582-83 (internal quotation marks and citations omitted).[6]

---

[6] *See also Cleveland v. City of Detroit*, 275 F. Supp. 2d 832 (E.D. Mich. 2003) (denying summary judgment in a case of mistaken identity, finding a factual scenario closer to *Gray* than to *Baker*). *But see Garcia v. Wayne County*, No. 74221, 2007 WL 2868026 (E.D. Mich. Sept. 27, 2007) (no constitutional violation where jail officials confirmed plaintiff's claim of mistaken identity on the day of his arrest but kept plaintiff for 48 hours waiting for transport); *McGee v. Kowalski*, No. 10952, 2008 WL 2743919 (E.D. Mich. July 14, 2008) (no constitutional violation where plaintiff detained for 10 hours while police actively

It is too early in these proceedings for this Court to foreclose Plaintiff's opportunity to discover facts that might put his claim closer to *Gray* than to *Baker* on the constitutional continuum of these mistaken identity cases. In the case before this Court, Plaintiff claims that he did not just protest his innocence but carried with him fingerprint and criminal clearance documentation, which he had worked hard to obtain, that he was not his brother. Plaintiff claims that his pleas of mistaken identity were ignored by the sheriffs despite the fact that they had effortless access to exonerating information. Plaintiff's claims against Wayne County based upon these alleged constitutional infringements need not, at the pleading stage, identify any particular custom or practice or policy or procedure. *See Petty v. County of Franklin Ohio*, 478 F.3d 341 (6th Cir. 2007) (holding that plaintiff's failure to identify a specific custom or policy or its contours or how exactly it effected a violation of his constitutional rights was not a fatal pleading error). Accordingly, this Court DENIES Wayne County's Motion to Dismiss Plaintiff's claims as they relate to the period of time following his arrest and prior to his ordered release on the morning of Monday, December 18, 2006, i.e. Plaintiff's claim that Wayne County sheriffs failed to investigate his protestations of innocence.

**2. Fourteenth Amendment deprivation of liberty without due process for the period of time following the court's order that Plaintiff be released (continued detention for "out-processing")**

In his response to Wayne County's Motion to Dismiss, Plaintiff states that he was detained "roughly eight to nine hours" after the court released him. (Pl.'s Resp. 10.) The

---

investigated her claims of innocence); *Johnson v. City of Detroit*, No. 13951, 2008 WL 408527 (E.D. Mich. Feb. 13, 2008) (no constitutional violation where plaintiff detained 29 hours); *Johnson v. City of Detroit*, No. 13951, 2009 WL 190051 (E.D. Mich. Jan. 27, 2009) (finding no violation for a detention less than one day).

Wayne County Circuit Court's actual Order of Discharge indicates the reason for discharge, i.e. wrong defendant, and instructs the Sheriff of Wayne County "to discharge the Defendant out of your custody in the Wayne County Jail, if detained for no other cause than what is expressed in the Order of Commitment." (Pl.'s Resp. Ex. 10.)  Although Plaintiff claims that the court ordered him to be released immediately and the Sheriff failed to do this, the actual Order of Discharge appears to assume that Plaintiff would be discharged pursuant to normal procedures and contains no language that Plaintiff be "immediately" released. Indeed the Order seems expressly to contemplate that Plaintiff will be transferred back to the jail, that a check for other causes to detain him will be made, and then Plaintiff will be released by the Sheriff.

Plaintiff relies on *Shorts v. Bartholomew*, 255 F. App'x 46 (6th Cir. 2007) to support his argument that his post-release detention constitutes an actionable constitutional violation. *Shorts* is easily distinguishable.  Shorts was held for a period of approximately seven months after he had served his sentence and was supposed to have been released. More on point are cases discussing what has been termed "out-processing," and the constitutionally permissible parameters of such an administrative excuse for continued detention post-release.  While the law on this issue is far from settled, and there is a paucity of authority in this circuit and district, a period of 8-9 hours seems constitutionally permissible absent aggravating circumstances, which Plaintiff does not allege here.

In *Brass v. County of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir. 2003), the court held that the sheriffs' department policies for out-processing released individuals, which resulted in plaintiff's 39-hour detention, did not violate plaintiff's due process rights. In *Dye*

15

*v. County of Hennepin*, No. 48914, 2005 WL 113561 at *4 (D. Minn. 2005) the court granted defendant's motion for summary judgment in a case of mistaken identity where out-processing took 10.5 hours. In *Pedersen v. Hennepin County*, No. 03-4890, 2005 WL 715934 (D. Minn. Mar. 26, 2005), the court granted defendant's motion for summary judgment where plaintiff, who had been released on bail, claimed that her 10-12 hour out-processing detention violated her due process rights. In *Sizer v. County of Hennepin*, 393 F. Supp. 2d 796, 800 (D. Minn. 2005), the court granted defendants' motion for summary judgment holding that plaintiff's 10.5 hour delay for out-processing was objectively reasonable and not unconstitutional. *But see Young v. City of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001) (affirming a jury verdict in favor of plaintiff whose 3 hour detention for out-processing, which was characterized by gross indignities including a second strip after her mistaken identity had been discovered and she had been ordered to be released, violated due process ).

There is no precedent binding this Court on the issue of the constitutionally permissible length of a delay caused by out-processing of released individuals. Nor is there persuasive authority for the proposition that, absent the type of shocking conduct involved in *Young*, a delay of 8-9 hours violates due process. This Court concludes that the 8-9 hour out-processing delay experienced by Plaintiff in this case, which is not alleged to have involved any aggravating or indignant circumstances, did not amount to a constitutional deprivation as a matter of law. This Court concludes that Plaintiff's Complaint does not state a viable constitutional claim based upon continued detention for "out-processing."

**IV.    Conclusion**

The State Defendants' motion to dismiss is GRANTED and Plaintiff's claims against the Michigan State Police, the 36th District Court and the Third Judicial Circuit Court, and any employees of these entities in their official capacities, are dismissed with prejudice.

Wayne County's motion to dismiss is GRANTED as it relates to the period of time on Monday, December 18, 2006 following the circuit court's issuance of the Order of Discharge and Plaintiff's release later that same day, i.e. Plaintiff's "out-processing" claim. Wayne County's motion to dismiss is DENIED on Plaintiff's claims as they relate to the period of time following his arrest and prior to his ordered release on Monday, December 18, 2006, i.e. Plaintiff's claim that Wayne County sheriffs failed to investigate his protestations of innocence.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 3, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 3, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager